UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JEFFREY D. BUTLER, CLEMENTENE
BUTLER, AINEISHA BUTLER,
and MALEIK BUTLER, Individually,

    Plaintiffs,

VS.                                                                                             No. 23-1054-STA-jay

MAYOR SCOTT CONGER, in his
official capacity and individual capacity,
LEWIS L. COBB, in his official capacity
and individual capacity, and the CITY OF JACKSON,
MADISON COUNTY, TENNESSEE,

    Defendants.

---

ORDER ADOPTING REPORT AND RECOMMENDATION FOR DISMISSAL
ORDER OF DISMISSAL
AND
ORDER CERTIFYING APPEAL NOT TAKE IN GOOD FAITH

---

    Before the Court is the United States Magistrate Judge's report and recommendation that Defendants' motions to dismiss (ECF Nos. 14, 20) be granted and that Plaintiffs' motion to amend the complaint (ECF No. 7), their request to submit for decision their motion to amend (ECF No. 29), and their motion for leave to file a sur-reply to Defendants' motion to dismiss be denied. (ECF No. 34.) The Magistrate Judge also recommended that Plaintiffs' sur-reply (ECF No. 28) be stricken. Magistrate Judge Jon A. York submitted his report and recommendation on November 7, 2023.  (ECF No. 35.) Plaintiffs have filed objections to the Magistrate Judge's Report. (ECF No. 36.) Defendants have not filed a response to Plaintiffs' objections.  Having reviewed the Magistrate Judge's report and recommendation *de novo* and the entire record of the

proceedings, the Court hereby **ADOPTS** the report and recommendation in its entirety. Defendants' motions to dismiss are **GRANTED**, and Plaintiffs' motions are **DENIED**. Judgment will be entered for Defendants.

If a party objects within the allotted time to a report and recommendation on a dispositive motion, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b) (1); *see also* Fed. R. Civ. P. 72(b). Parties must file specific objections; "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 2001 WL 303507 *1 (6th Cir. March 19, 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991). Therefore, to the extent that Plaintiffs have made "vague, general, or conclusory objections," those objections are waived, and the Court will consider only the portions of the report and recommendation to which Plaintiffs has made specific objections.

The Court hereby adopts the factual background and procedural history as set out by the Magistrate Judge. (Rep. & Rec. pp. 2 – 3, ECF No. 35 (record citations and footnotes omitted)).[1]

> The origins of this case date back to the 1900s[2] — specifically 1997. Plaintiff Jeffrey Butler received various citations for violations of Jackson City ordinances. There are a few details from those proceedings that are relevant to the instant suit.

---

[1] Plaintiffs object to the Magistrate Judge's recitation of the facts and procedural background. (Obj. at p. 3.) However, the Court finds that the Magistrate Judge's recitation is supported by the record.

[2] Plaintiffs object to the reference to "the 1900s" (*id.*), but the Magistrate Judge made clear that the events giving rise to this action began in 1997.

2

There were five citations issued to Jeffrey Butler for which the Jackson City Court levied a fine against him in the amount of $250. *City of Jackson v. Butler*, 10 S.W.3d 250, 252 (Tenn. Ct. App. 1999) (hereinafter *Butler I*). Jeffrey Butler appealed the decision to the Madison County Circuit Court, which affirmed the violations but ordered the city to "send Butler a new letter informing him of what must be done to bring the property up to code." *Butler I*, 10 S.W.3d at 252. Plaintiff appealed to the Tennessee Court of Appeals. *Id.* The Court of Appeals reversed two of the violations, affirmed three of the violations, and remanded the case to the Circuit Court for determination of the fine. *Id.* at 258-58. On remand, the Circuit Court fined Jeffrey Butler $750, which he appealed. *Butler v. City of Jackson*, 63 S.W.3d 372, 372 (Tenn. Ct. App. 2001) (hereinafter *Butler II*).[3] The Tennessee Court of Appeals reversed that decision, imposed a fine of $250, and remanded the case for "any further proceedings that may be necessary." *Butler II*, 63 S.W.3d at 376. Plaintiffs refer to *Butler II* as "Case No. 97-727," which the Court will adopt for the purposes of this Report and Recommendation.

Jeffrey Butler then sued the City and the State of Tennessee in a separate action in state court. *Butler v. City of Jackson*, 54 F. App'x 815, 816 (6th Cir. 2002) (hereinafter *Butler III*). The City of Jackson removed the case to this Court and filed a Motion to Dismiss in August 2001. *Butler III*, 54 F. App'x at 816. Plaintiffs refer to this case by the case caption number as well. For the purposes of this Report and Recommendation, the Court will refer to this action as Case No. 01-1258. Finding that the facts raised by Jeffrey Butler were "necessary to the judgment that was entered" against him in Case No. 97-727, the District Court determined that the doctrine of collateral estoppel prevented the case from proceeding. *Id.* at 817. The Court also noted the State enjoyed Eleventh Amendment immunity. *Id.*

Jeffrey Butler appealed. *Id.* at 816. The Sixth Circuit affirmed the District Court's analysis. *Id.* at 817 ("Upon review, we conclude that the dismissal of Butler's case was proper for the reasons stated by the district court. Butler's claims against the City are barred by the doctrine of collateral estoppel.... Finally, the district court properly found that the Eleventh Amendment bars the claim against the State of Tennessee."). He attempted to appeal to the United States Supreme Court, but because his petition was "out-of-time," the Court did not have "the power to review the petition."

Jeffrey Butler, and three of his family members, have filed a new lawsuit — two decades later — in this Court claiming fraud. Plaintiffs seek relief from the judgment in Case No. 01-1258 pursuant to Federal Rule of Civil Procedure 60 on the ground that the resolution of that case was based upon fraud. In addition to the relief from judgment sought, Plaintiffs claim Defendants "violated Plaintiffs'

---

[3] Plaintiffs object to the Magistrate Judge's use of the short citation *Butler II*. (*Id.* at p. 6.) This short citation form is for ease of reading and has no bearing on the decisions made by the Magistrate Judge or by this Court.

3

civil rights as they relate to U.S. Const. Amendments 5 and 14 [sic] and Tenn. Const. Art. I, Sec. 10 [sic] from 1998 until this present day."

The Magistrate Judge summarized the issues presented in the complaint as: (1) whether the judgment in Case No. 01-1258 should be set aside pursuant to Federal Rule of Civil Procedure 60; (2) whether Defendants violated Plaintiffs' federal constitutional rights; and (3) whether Defendants violated Plaintiffs' state constitutional rights. (Rep. & Rec. at p. 4.) The Magistrate Judge concluded that judgment in Case No. 01-1258 should not be set aside, Plaintiffs' claims should be dismissed, and the motion to amend the complaint should be denied on the grounds that the proposed amendment would be futile. (*Id.*)

As for the first issue, whether the judgment in Case No. 01-1258 should be set aside pursuant to Federal Rule of Civil Procedure 60, the Magistrate Judge determined that it should not. In making that determination, he looked at Federal Rule of Civil Procedure 60 which provides two ways in which a court may set aside a judgment or order on the ground of fraud. The first option — Rule 60(b)(3) — provides that a "party or its legal representatives" may move for relief "from a final judgment, order, or proceeding" by establishing "fraud..., misrepresentation, or misconduct by an opposing party ...." The Magistrate Judge correctly noted that a motion brought pursuant to Rule 60(b)(3) is subject to a time limitation of "no more than a year after the entry of the judgment or order or the date of the proceeding." Moreover, usually a party seeking "relief on the ground that the opposing party committed fraud" files "a motion in the original action under Rule 60(b)(3)," *Giasson Aerospace. Sci., Inc. v. RCO Eng'g Inc.*, 872 F.3d 336, 338 (6th Cir. 2017), which was not done in this case.

The second option for setting aside a judgment is set out in Rule 60(d), which allows a party to bring an "independent action to relieve [it] from a judgment, order, or proceeding" or to "set aside a judgment for fraud on the court." An aggrieved party who fails to file a motion

4

pursuant to Rule 60(b)(3) within the one-year limitations period may still bring an independent action pursuant to Rule 60(d)(1) "regardless of the passage of time." *Id.* at 339. The Magistrate Judge considered that, for relief under Rule 60(d), the movant must meet a "demanding. . . grave miscarriage of justice" standard. *Id.* at 339-40. Moreover, when a court has already heard "issues regarding the alleged fraud," then those issues "should not be revisited." *Computer Leasco, Inc., v. NTP, Inc.*, 194 F. App'x 328, 336 (6th Cir. 2006).

The Magistrate Judge then found that Plaintiffs' endeavor to set aside the judgment in Case No. 01-1258 was time-barred because their request was not made within the one-year time limit of Rule 60(c)(1).[4] The United States Supreme Court declined to review Plaintiff Jeffrey Butler's petition for a writ of certiorari on March 24, 2003, in Case No. 01-1258. Using the outside date of the Supreme Court's denial of the petition for writ of certiorari as the date for applying the one-year limitation, Plaintiffs' present action under Rule 60(b)(3) is clearly time-barred.

The Magistrate Judge next correctly determined that the present action does not meet the grave miscarriage of justice standard under Rule 60(d) because Judge James D. Todd, the presiding judge in Case No. 01-1258, was presented with and rejected Plaintiffs' claims of fraud as evidenced by statements made by Plaintiffs in this case. In their response to Defendant Cobb's motion to dismiss (ECF No. 15), Plaintiffs argue that Judge Todd "refused to accept the truth and facts in 2001" concerning the alleged fraud. In their response to the later motion to dismiss (ECF No. 21), they claim that Judge Todd based his ruling on "fraudulent information." Thus, the record supports the Magistrate Judge's finding that the issue of fraud was raised and rejected in 2001.

---

[4] Rule 60(c)(1) sets out the time for filing a motion under Rule 60(b) (1) – (3).

The Magistrate Judge also correctly rejected Plaintiffs' argument that Defendant Cobb fabricated evidence in Case No. 01-1258 by representing to Judge Todd that there was a final judgment in the state court Case No. 97-727, such that the doctrine of collateral estoppel prevented Case No. 01-1258 from going forward. As explained by the Magistrate Judge, exhibits attached to Plaintiffs' complaint (ECF Nos. 1-15, 1-16) are state court documents showing an order and judgment entered in state court. The documents show filing stamps with dates and initials by the court clerk. Plaintiffs have pointed to no evidence showing that these documents were forged or otherwise falsified.

Based on this analysis and after reviewing the record de novo, the Court agrees with the Magistrate Judge that Plaintiffs have failed to meet the grave miscarriage of justice standard required under Rule 60(d), and the judgment in Case No. 01-1258 should not be set aside.

Turning to the Magistrate Judge's analysis of Defendants' motions to dismiss and his recommendation that the motions be granted, the Court finds that his analysis is grounded in the law and the facts as presented in the record. The Magistrate Judge first summarized the well-known standard of review for Rule 12(b)(6) motions to dismiss as set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 667-79 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), and then applied that standard,[5] after acknowledging that pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers and pro se complaints should be liberally construed.

---

[5] Plaintiffs appear to object to the use of the *Iqbal* and *Twombly* standards (Obj. at p. 16.), although they later complain that the Magistrate Judge did not follow *Twombly* in making his decision. (*Id.* at p. 17.) Despite any objection made by Plaintiffs, those are the standards that courts use in deciding Rule 12(b)(6) motions to dismiss. *See, e.g., Stanford v. Northmont City Sch. Dist.*, 2021 WL 2952777, at *1 (S.D. Ohio July 14, 2021) (commenting that the standards applicable to a Rule 12(b)(6) motion to dismiss are well established as set forth in *Iqbal* and *Twombly*); *accord Bluff City Partners, LLC v. 22 N. Third, LLC*, 2019 WL 13153216, at *7 (W.D. Tenn. Nov. 15, 2019).

The Magistrate Judge accepted Defendants' argument that dismissal was appropriate because Plaintiffs' claims were barred by the statute of limitations and there is no private cause of action under the Tennessee Constitution and rejected Plaintiffs' argument that the doctrine of equitable estoppel tolled the statute of limitations. In doing so, he looked at the one-year statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 and cited the correct law that the statute limitations begins to run "when plaintiffs knew or should have known of the injury which forms the basis of their claims," *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001), and that federal law establishes that "[a] plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 501. The Magistrate Judge then determined that the latest date related to this action took place in 2003, and, therefore, Plaintiffs were required to file suit no later than sometime in 2004 to pursue their claims. The record supports this determination.[6]

Next, the Magistrate Judge found Defendants' argument that the Tennessee State Constitution does not provide a private cause of action and that Plaintiffs' double jeopardy claims should be dismissed to be persuasive. As stated by the Magistrate Judge, "[I]it is well established that Tennessee does not recognize an implied private cause of action for damages based upon violation of the Tennessee Constitution." *Wooley v. Madison County*, 209 F. Supp. 2d 836, 844 (W.D. Tenn. June 6, 2002). Tennessee does, however, recognize that double jeopardy may apply in the context of a civil ordinance violation, but only if the party subject to the fine files a "timely objection" in the original proceeding. *See Metro. Gov't of Nashville &*

---

[6] Plaintiffs attempt to rely on the filing of their 2001 lawsuit to toll the statute of limitations in this suit. (Obj. at p. 19.) Once judgment had been entered in the 2001 suit and the Court of Appeals had affirmed the judgment, the statute of limitations began running. Plaintiffs also mention a 2016 lawsuit filed in Chancery Court that is possibly still pending and contend that Defendants should have removed that action to this Court. (*Id.*) Any issues concerning the 2016 state court lawsuit are not presently before this Court.

*Davidson Cnty. v. Dreher*, 2021 WL 942872, at *3 (Tenn. Ct. App. Mar. 12, 2021). Here, Plaintiffs allege an issue of double jeopardy related to the city ordinance violations and seek money damages. However, there is no private cause of action to pursue damages related to a violation of a plaintiff's state constitutional rights. *Wooley*, 209 F. Supp. 2d at 844. The Magistrate Judge further correctly determined that, if Plaintiffs wanted to pursue the issue of double jeopardy, they needed to do so within the confines of the case in which the alleged violation occurred. The Court agrees with the Magistrate Judge that the issue of double jeopardy is untimely and there is no separate cause of action under Tennessee law, resulting in the dismissal of Plaintiffs' state constitutional claims.

The Magistrate Judge rejected Plaintiffs' argument that equitable estoppel tolled the applicable statute of limitations and also rejected the application of the continuing violation doctrine to Plaintiffs' claims. After recognizing that Tennessee law recognizes equitable estoppel as a tolling mechanism, i.e., it excuses a plaintiff's failure to timely file suit, *see Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012), and noting that the party attempting to invoke the tolling mechanism has the burden of proof, *see id.*, he summarized the factors needed to establish equitable estoppel. The doctrine requires a plaintiff to "demonstrate that the defendant induced him or her to put off filing suit by identifying specific promise, inducements, suggestions, representations, assurances or other similar conduct by the defendant that . . . would induce the plaintiff to delay filing suit." *Id.* (internal citations omitted).

> The party asserting estoppel must prove that the party to be estopped: (1) engaged in "[c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;" (2) had knowledge, actual or constructive, of the real facts; and (3) acted with the intent or at least the expectation that its representation or concealment would be acted on by the other party. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 315–16 (2009).

8

Case 1:23-cv-01054-STA-jay   Document 37   Filed 01/04/24   Page 9 of 12   PageID 510

> The party asserting estoppel must also prove that he: (1) relied on the false representation or concealment; (2) changed his position to his prejudice; and (3) lacked knowledge and the means of acquiring knowledge of the truth as to the facts in question. *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990). In some circumstances, estoppel may be based on a party's affirmative misrepresentation or their "silence or negative omission." *Baliles v. Cities Serv. Co.*, 578 S.W.2d 621, 624 (Tenn. 1979) (citation omitted); *Evans v. Belmont Land Co.*, 92 Tenn. 348, 365 (1893). Courts applying Tennessee's doctrine of equitable estoppel usually approach the task holistically rather than going factor-by-factor.

*Billingsley v. Doe #1*, 2022 WL 4088511, at *4 (6th Cir. Sept. 7, 2022) (some citations omitted).

The Magistrate Judge also correctly stated that the statute of limitations does not expire when there is a continuing violation. However, in the context of § 1983 litigation, "[a] continuing violation . . . occurs when there are continued unlawful acts, not by continued ill effects from the original violation." *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 308 (6th Cir. 2010).

In applying these principles, the Magistrate Judge found that Plaintiffs had failed to establish the elements necessary to proceed under equitable estoppel because there is no evidence in the record that Defendants now or previously did anything that would amount to a false representation of material facts. Specifically, the Magistrate Judge pointed out that, even if fraudulent documents and fraudulent misrepresentations were presented to the Court in 2001 and in the underlying state court case(s), Plaintiffs cannot show that they relied on the fraud because Plaintiffs maintain that they always knew that Defendants had made misrepresentations to the Court. The Court finds the Magistrate Judge's finding that Plaintiffs are not entitled to the application of equitable estoppel to toll the statute of limitations to be grounded in the facts of the case and the applicable law.

As for the continuing violation doctrine, Plaintiffs have not shown that the alleged violation of their rights have continued from 1997-98 to the present. Other than the continued effects of adverse court rulings, they have failed to provide any facts allowing the Court to find that Plaintiffs have made a plausible claim that Defendants have continued to violate those rights.

The Magistrate Judge has recommended denying Plaintiffs' motions to amend the complaint because they are futile. Plaintiff Jeffrey Butler has moved to amend the original complaint to remove the other plaintiffs so that he may proceed as the sole plaintiff without altering any of the substantive claims raised in the original complaint. Plaintiffs have also moved for a "decision" on the motion to amend. Because the Court adopts the recommendation that Defendants' motions to dismiss be granted, which will result in the dismissal of the entire action, the Magistrate Judge's recommendation as to the motions to amend is also adopted. *See Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that a motion to amend may be denied as futile.))

The Magistrate Judge has also recommended striking Plaintiffs' filing at Docket Entry 28, which is, in effect, a sur-reply on the ground that Plaintiffs did not obtain permission from the Court to do so. Apparently, this Court's order affirming the decision of the Magistrate Judge striking Plaintiffs' filings (ECF No. 27) led Plaintiffs to think they had permission to file a sur-reply. In that order, this Court stated, "If Plaintiff wants to file a sur-reply to Defendants' motions to dismiss, he must file a separate motion with an accompanying certificate of consultation." (*Id.* at p. 2.) Plaintiffs interpreted this statement to mean that permission would be granted upon their filing a motion and certificate of consultation. (Obj. at p. 12.) Plaintiffs' misunderstanding of the Court's directive, while perhaps understandable, was still in error. A

10

party must receive permission to file a sur-reply prior to the filing of the sur-reply. Consequently, the Magistrate Judge was correct to recommend striking the sur-reply.[7]

Finally, the Magistrate Judge has recommended that Plaintiffs' motion for leave to file a sur-reply should be denied because the proposed sur-reply contains no new facts or legal arguments that would alter the analysis regarding the motions to dismiss. Plaintiffs disagree and contend that they have presented new facts and legal arguments. (Obj. at pp. 12-13.) However, after examining the proposed sur-reply, the Court finds that there is nothing in that document that would change the Court's decision to adopt the Magistrate Judge's recommendation.

Because the Magistrate Judge correctly determined that Defendants' motions to dismiss should be granted and Plaintiffs' motions denied, Plaintiffs' objections are **OVERRULED**, and the Report and Recommendation is **ADOPTED**. Accordingly, Defendant's motions to dismiss (ECF No. 14, 20) are **GRANTED**, and Plaintiffs' motion to amend the complaint (ECF No. 7), their request to submit for decision their motion to amend (ECF No. 29), and their motion for leave to file a sur-reply to Defendants' motion to dismiss (ECF No. 34) are **DENIED**. Plaintiffs' reply (ECF No. 28) is hereby **STRICKEN**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

The Court must also consider whether Plaintiffs should be allowed to appeal this decision *in forma pauperis*, should they seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal *in forma pauperis* must obtain pauper status under Fed. R. App. P. 24(a). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, she must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1).

---

[7] Even if the sur-reply had been considered, the ultimate disposition of this case would be the same.

11

However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the party must file his or her motion to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that Defendants are entitled to dismissal but the action has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to grant Defendants' motions to dismiss also compel the conclusion that an appeal would not be taken in good faith.

It is **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by Plaintiffs is not taken in good faith. Leave to proceed on appeal *in forma pauperis* is, therefore, **DENIED**. Accordingly, if Plaintiffs file a notice of appeal, they must also pay the full appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.[8]

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 4, 2024.

---

[8] Pursuant to Fed. R. App. P. 3(a), any notice of appeal should be filed in this court. A motion to appeal *in forma pauperis* then should be filed directly in the United States Court of Appeals for the Sixth Circuit. Unless they are specifically instructed to do so, Plaintiffs should not send to this court copies of documents intended for filing in the Sixth Circuit.